UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANA LYNN A.,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

20-CV-00968-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Dana Lynn A.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 12) is denied, defendant's motion (Dkt. No. 14) is granted, and the case is closed.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for DIB and SSI on February 23, 2017, alleging a disability onset date of October 16, 2015. (Administrative Transcript ["Tr."] 184-94). The application was initially denied on May 19, 2017. (Tr. 66-88). Plaintiff timely filed a request for an administrative hearing. (Tr. 106-22). On May 24, 2019, Administrative Law Judge ("ALJ") William Weir held a hearing in Buffalo, New York, at which Plaintiff attended with her attorney. (Tr. 31-36; 40-65). A vocational expert also testified via telephone. The ALJ issued a decision finding Plaintiff not disabled, on June 12, 2019. (Tr. 12-30). On June 8, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

- 2 -

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 16, 2015, 2017, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: asthma; chronic finger abscesses; and status myocardial infarction. (Tr. 18-19). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-20). Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(a), with the following additional limitations:

- can perform simple repetitive one and two-step tasks;
- cannot perform complex work (complex work is defined as work involving multiple simultaneous goals and objectives or the need to independently set quantity, quality or method standards);
- can have one change per workday in general work task or setting;
- can occasionally handle;

- cannot work around chemicals or solvents without gloves;
- cannot work in environments with pulmonary irritants: dusts, fumes, gases, *etc.*,
- can occasionally reach and finger.

(Tr. 20-23). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 23). At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy. (Tr. 24). Accordingly, the ALJ determined that Plaintiff has not been under a disability from October 16, 2015, through the date of the decision. (Tr. 25).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because when crafting it, the ALJ improperly relied on his own lay opinion rather than on medical opinion evidence. The Court finds this argument without merit.

A claimant's RFC is the most the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). As the Second Circuit has stated, "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, --- F. App'x ---, 2021 WL 1942331, at *2, n.3 (2d Cir. May 14, 2021) (Summary Order) (citing 20 C.F.R. § 404.1527(d)(2)); *see* Social Security Ruling 96-8p, 1996 WL 374184, at *2 (emphasis supplied); *see also Tiffany L. v. Commissioner*, 2021 WL 3145694 at *3 (W.D.N.Y. July 26, 2021). The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F.

App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination. The ALJ gave "significant weight" to the April 26, 2017 assessment from David Brauer, M.D., an agency consultative examiner. (Tr. 23; *referring to* Tr. 544-47). Dr. Brauer noted Plaintiff's subjective complaints and medical history, including "recurrent paronychial infections on the tips of her fingers over the last several years." (Tr. 544-45). However, Plaintiff was still able to cook routinely, clean daily, do laundry twice a week, shop four times a week, shower and dress herself daily, and socialized with friends. (Tr. 545).

On examination, Plaintiff had a normal gait, could walk on her heels and toes without difficulty, had a full squat and normal stance, used no assistive devices, needed no help changing for examination or getting on and off the examination able, and was able to rise from a chair without difficulty. (Tr. 546). She had a normal cardiopulmonary examination. (Tr. 546). She had full range of motion in her cervical and lumber spine and no scoliosis, kyphosis, or abnormality in his thoracic spine. (Tr. 546). She had negative bilateral straight leg raises. (Tr. 546). She had full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles – with no evident subluxations, contractures, ankylosis, or thickening. (Tr. 546). Her joints were stable and non-tender, with no redness, heat, swelling, or effusion. (Tr. 546). Her deep tendon reflexes were

physiologic and equal in the upper and lower extremities. (Tr. 547). No sensory deficits were noted. (Tr. 547). She had full (5/5) strength in the upper and lower extremities. (Tr. 547). She had intact hand-and-finger dexterity as well as full bilateral grip strength. (Tr. 547).

Dr. Brauer then assessed (Tr. 547) "no limitation in the claimant's ability to sit, stand, walk, climb, push, pull, lift, or carry objects" though the "claimant should avoid dust, smoke, allergens, or other respiratory irritants due to history of asthma." Dr. Brauer's assessment was consistent with the RFC for light work, that entailed no more than occasional handling or occasional reaching and fingering; no work around chemicals or solvents without gloves; and no work in environments with pulmonary irritants, dusts, fumes, gases, *etc.* (Tr. 20).

The ALJ assigned significant weight to Dr. Brauer's assessment. (Tr. 23). The ALJ noted Dr. Brauer's opinion was well supported by a comprehensive examination of the Plaintiff and was generally consistent with the medical evidence of record. (Tr. 23). However, the ALJ noted that "given the claimant's coronary history and intermittent symptoms of chronic finger abscesses, the [RFC] incorporates greater limitations in the claimant's overall exertional level and ability to finger, handle, and reach, and to be exposed to chemical or solvents." (Tr. 23).

A well-supported assessment from a consultative examiner like Dr. Brauer may provide substantial evidence supporting the RFC. See *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (*citing Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (*per curiam*)).

The ALJ also assigned "significant weight" to the May 2017 assessment from Dr. G. Feldman, a non-examining state-agency doctor who considered the available medical evidence. The ALJ reasoned: "Dr. Feldman's opinion is well supported by a longitudinal review of the medical evidence of record. However, the repeated infections and abscesses of the claimant's fingers warrant greater restrictions in exposure to chemicals, manipulation, fingering, and reaching, despite the benign findings during periods of no infection." (Tr. 23 *referring to* Tr. 544-47, 720); *see also* (Tr. 301-02, 304, 318, 322, 324, 332, 340, 344, 337-40, 343-44, 347, 357, 362, 385, 394, 412, 416, 424, 663, 690, 694, 719-20, 795-96 (treatment notes for finger issues)).

A well-supported assessment from a non-examining state-agency physician like Dr. Feldman may provide substantial evidence supporting an RFC. *See Diaz v. Shalala*, 59 F.3d at 313 n.5. (2d Cir. 1995) (State agency consultants are recognized experts whose medical opinions can constitute substantial evidence); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision, and can even override a treating source opinion); *Heagney O'Hara v. Commissioner*, 646 F. App'x 123, 126 (2d Cir. 2016) (the ALJ correctly gave great weight to the opinion of a medical expert; even though he lacked a treating relationship because his opinion was consistent with the objective medical evidence in the record.); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (2d Cir. 2016) (rejecting Camille's contention that State agency psychological consultant's opinion was "stale" because it did not have the benefit of later-submitted treatment records and treating physician evidence); *Micheli v. Astrue*,

501 F. App'x 26, 29 (2d Cir. 2012) (finding that opinion of State agency physician provided substantial evidence to support ALJ's RFC finding).

Plaintiff argues that while the ALJ gave significant weight to two medical opinions in formulating the RFC, he further found that Plaintiff's hand and finger issues warranted greater limitations than included in those medical opinions, and he therefore improperly relied on his own lay opinion in fashioning those additional limitations. The Court finds this argument unpersuasive.

As noted by the ALJ when formulating the RFC:

> The claimant <u>is diagnosed with chronic finger abscesses</u>. The claimant utilized emergency room services for a hand wound in June 2015, March 2016, June 2016, July 2016, October 2016, January 2017, March 2017, January 2018, November 2018, and January 2019. 16F/27; 15F/ 12; 12F/5; BF/11, 82; l0F/2; 2F/7, 37; IF/6, 29. In March 2017, the claimant had an infection in her left finger. BF/11. <u>She described the symptoms as "mild" at their worst.</u> BF/14. In July 2016, the claimant asked the emergency room provider to drain her abscess but did not want to see a specialist as advised by the physician. IF/10. Medical imaging showed an old amputation of the tip of the right index finger but no osteomyelitis or acute bony abnormality. IF/23. In January 2019, the claimant had several abscesses on her right thumb and reported pain and decreased range of motion in the hand with movement. 15F/20. She was negative for numbness, tingling, vomiting, and fever. 15F/20. The pain had been present for several days. 15F/20. While at the hearing the claimant described pain in multiple fingers at the same time, her hospital visits identify one finger at each visit. *see e.g.* BF/82 (a swollen area on the right middle finger); and BF/139 (infection in right index finger). The claimant similarly reported discrete incidents to David Brauer, M.D., and denied any pain in her fingers but did report numbness at the fingertips. 8F/3. <u>After treatment, the claimant's symptoms improved</u>. BF/140. For example, the claimant was in no acute distress, and felt better after treatment at the hospital in November 2018. BF/140.
>
> The claimant's treatment notes from non-hospital care providers <u>have periods where no abscesses are noted</u>. 11F/5 and 17F/3. The claimant's skin was unremarkable. 11F/5. The claimant's skin was within normal limits on examination in April 2017. 8F/4. She displayed intact hand and finger dexterity and full grip strength. 8F/5. On examination in October 2016 the claimant's sensation was intact. IF/29. <u>Thus, confirming that the claimant's hand problems are episodic rather than constant. Given, the claimant's generally benign findings during periods without infections, the discrete nature of the infections, and the findings of pain and limited range of motion during these acute events, the claimant is limited to</u>

<u>occasional reaching, fingering, and handling. She cannot be exposed to chemicals or solvents without gloves</u>. In addition, the pain caused by this condition, in concert with her non-severe mental impairments, allows the claimant to perform simple repetitive one and two-step tasks but limits her from complex work. Moreover, to limit any additional exacerbating stress the claimant is limited to one change in work task or setting per day.

Tr. 22 (emphasis added).

Moreover, the RFC's limitations here are further supported by Dr. Brauer's examination results that showed that Plaintiff's joints were stable and non-tender, with no redness, heat, swelling, or effusion – as well as full (5/5) strength in the upper and lower extremities, intact hand-and-finger dexterity, and full bilateral grip strength. (Tr. 546-47).

Thus, in fashioning the additional limitations in the RFC, the ALJ did not reject the assessments from Drs. Brauer and Feldman, but rather added to those assessments based on the medical and other evidence in the record, which he is allowed to do. *See Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321P, 2019 WL 4140936, at *5 (W.D.N.Y. Aug. 30, 2019) ("Here, the ALJ did not completely reject [the consultative examiner's] medical opinion; rather, she incorporated [the consultative examiner's] assessed limitations and also included greater limitations than opined by [the consultative examiner]. I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the medical evidence."); *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)); *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's

RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

Regarding the RFC's mental work-related limitations, in support of those limitations, the ALJ noted earlier in the decision when making the Step 2 determination that: (1) an August 2018, a screening instrument rated Plaintiff as having no symptoms of depression (Tr. 567); (2) other testing showed a risk for "mild depression" (Tr. 764) and; (3) overall, Plaintiff showed no specialized mental health treatment, no psychiatric medication, and no inpatient mental health hospitalizations. (Tr. 18). The ALJ further noted that in July 2016, Plaintiff's appearance was appropriate, she had no memory impairment, and she had normal speech. (Tr. 18 *referring to* Tr. 306). The ALJ noted that Plaintiff reported that she could follow written and spoken instructions; she also had no trouble remembering things. (Tr. 18 *referring to* Tr. 266). She was consistently cooperative with medical professionals, enjoyed socializing with friends, and did not have any difficulty getting along with others. (Tr. 18 *referring to* Tr. 264, 545, 569, 888). The ALJ further noted that Plaintiff described her ability to focus and concentrate as, "I'm focused, I concentrate." (Tr. 18 *referring to* Tr. 53). She also enjoyed watching television, listening to the radio, and reported no difficulties paying attention. (Tr. 18 *referring to* Tr. 265, 545). Finally, the ALJ noted that an August 2018 examination showed that Plaintiff appeared "emotionally stable," made good eye contact, and had appropriate behavior, speech, and thought content. (Tr. 18 *referring to* Tr. 570). She reported difficulty managing stress. (Tr. 18 *referring to* Tr. 266). The ALJ concluded that the foregoing indicated only mild impairments and, thus, Plaintiff's mental impairments were not severe at Step 2.

Nonetheless, the ALJ proceeded past Step 2 and considered Plaintiff's mental impairments when formulating the RFC, concluding that Plaintiff can perform unskilled work with one change per workday in general work task or setting. (Tr. 20); *see Parker-Grose v. Astrue*, 462 Fed.Appx. 16, 2012 WL 29319 at *2 (2d Cir. Jan 6, 2012) (harmless error when ALJ proceeds past Step 2 and considers non-severe impairments in RFC analysis).

While Plaintiff argues that the ALJ did not explain these limitations when formulating the RFC, the ALJ explicitly considered Plaintiff's mental limitations in relation to her ability to work, and the relatively benign medical and other evidence therein. Moreover, the RFC's limitation to unskilled work with one change per workday in general work task or setting was supported by the evidence discussed above, including Plaintiff's own testimony that she could concentrate.

In sum, the limitations in the RFC to unskilled work with one change per workday in general work task or setting were supported by substantial evidence, including Plaintiff's own testimony as well as the medical and other evidence the ALJ explicitly considered in detail. A remand here is unnecessary, as the record contains sufficient evidence from which the ALJ could assess the plaintiff's RFC.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 14) is granted, and the case is closed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   November 19, 2021
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge